Citation Nr: 1554492 
Decision Date: 12/31/15 Archive Date: 01/07/16

DOCKET NO. 06-07 135A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Phoenix, Arizona


THE ISSUES

1. Entitlement to a disability evaluation in excess of 30 percent for asthma from January 4, 2013 to July 9, 2014.

2. Entitlement a disability rating in excess of 40 percent for lumbar disc disease (low back disability), to include a rating in excess of 20 percent prior to 
August 26, 2008.

3. Entitlement to a disability rating in excess of 10 percent prior to July 9, 2009, and in excess of 20 percent afterwards, for left lower extremity radiculopathy.

4. Entitlement to a disability rating in excess of 20 percent for right lower extremity radiculopathy.

5. Entitlement to a disability rating in excess of 20 percent for right lower extremity neuropathy.

6. Entitlement to a disability rating in excess of 20 percent for left lower extremity neuropathy.
REPRESENTATION

Veteran represented by: The American Legion


ATTORNEY FOR THE BOARD

T. Berryman, Associate Counsel


INTRODUCTION

The Veteran had active military service from January 1985 to May 1985 and October 1986 to November 1990.

This case comes before the Board of Veterans' Appeals (Board) on appeal from rating decisions by the Department of Veterans Affairs (VA) Regional Office (RO) in Phoenix, Arizona.

In a January 2008 rating decision, the Veteran's previously assigned disability ratings of 20 percent for his low back disability and 10 percent for his left lower extremity radiculopathy were continued and he was granted an increased disability rating of 10 percent effective April 30, 2007, for his asthma.

In a July 2009 rating decision, the Veteran's left lower extremity radiculopathy was increased to 20 percent effective July 9, 2009, and he was granted service connection for his right lower extremity radiculopathy effective July 12, 2007.

In September 2012 and November 2013, the Board remanded the claims for further development. In a June 2013 rating decision, the Veteran's asthma was increased to 30 percent disabling effective January 4, 2013. In a December 2013 rating decision, the Veteran was granted service connection for bilateral lower extremity neuropathy rated 10 percent disabling effective April 30, 2007.

In June 2014, the Board denied the Veteran's claim for an asthma rating in excess of 10 percent prior to January 4, 2013, and again remanded the claims for further development. In a January 2015 rating decision, the Veteran's asthma was increased to 100 percent effective July 9, 2014, his left lower extremity radiculopathy was increased to 20 percent effective June 30, 2014, his left lower extremity neuropathy was increased to 20 percent effective June 30, 2014, and his right lower extremity neuropathy was increased to 20 percent effective June 30, 2014.

As the Veteran's increased rating claims have not been granted in full, the claims remain before the Board. See AB v. Brown, 6 Vet. App. 35 (1993). 

The Board is satisfied that there was at the very least substantial compliance with its latest remand directives. See Dyment v. West, 13 Vet. App. 141, 146-157 (1999). 


FINDINGS OF FACT

1. From January 4, 2013 to July 9, 2014, asthma was not shown to be manifested by pulmonary function testing showing forced expiratory volume in one second (FEV-1) of 40 to 55 percent of predicted value, by a ratio of FEV-1 to forced vital capacity (FVC) of between 40 to 55 percent, by a need for a course of systemic (oral or parenteral) corticosteroids at least three times per year, or by episodes of respiratory failure.

2. Prior to August 26, 2008, range of motion testing, even contemplating functional limitation due to pain, weakness, stiffness, fatigability, lack of endurance, and repetitive motion etc., did not shown forward flexion of the Veteran's thoracolumbar spine was functionally limited to 30 degrees or less; favorable ankylosis of the entire thoracolumbar spine; or incapacitating episodes having a total duration of at least four weeks but less than six weeks during a 12 month period.

3. At no time has unfavorable ankylosis of the entire thoracolumbar spine or incapacitating episodes having a total duration of at least six weeks during a 12 month period.

4. Prior to July 9, 2009, the Veteran's left lower extremity radiculopathy was characterized by mild incomplete paralysis of the sciatic nerve; moderate incomplete paralysis was not shown.

5. As of July 9, 2009, the Veteran's left lower extremity radiculopathy has been characterized by moderate incomplete paralysis of the sciatic nerve; moderately severe incomplete paralysis has not been shown.

6. The Veteran's right lower extremity radiculopathy has been characterized by moderate incomplete paralysis of the sciatic nerve; severe incomplete paralysis has not been shown.

7. The Veteran's left lower extremity neuropathy has been characterized by moderate incomplete paralysis of the anterior crural nerve; severe incomplete paralysis has not been shown.

8. The Veteran's right lower extremity neuropathy has been characterized by moderate incomplete paralysis of the anterior crural nerve; severe incomplete paralysis has not been shown.


CONCLUSIONS OF LAW

1. From January 4, 2013 to July 9, 2014, the criteria for a disability rating in excess of 30 percent for asthma have not been met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 3.159, 3.321, 4.1, 4.7, 4.97, Diagnostic Code 6602 (2015).

2. The criteria for a disability rating in excess of those assigned for a low back disability have not been met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 3.321, 4.1, 4.2, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5242 (2015).

3. The criteria for an initial rating in excess of those assigned for left lower extremity radiculopathy have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 4.7, 4.124a, Diagnostic Code 8599-8520 (2015).

4. The criteria for a higher disability rating for right lower extremity radiculopathy have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 4.7, 4.124a, Diagnostic Code 8520 (2015).

5. The criteria for a higher disability rating for right lower extremity neuropathy have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 4.7, 4.124a, Diagnostic Code 8526 (2015).

6. The criteria for a higher disability rating for left lower extremity neuropathy have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 4.7, 4.124a, Diagnostic Code 8526 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

Under applicable criteria, VA has certain notice and assistance obligations to claimants. See 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). In this case, required notice was met, and neither the Veteran, nor his representative, has either alleged, or demonstrated, any prejudice with regard to the content or timing of VA's notices or other development. See Shinseki v. Sanders, 129 U.S. 1696 (2009). Thus, adjudication of his claim at this time is warranted. 

As to VA's duty to assist, the Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). Private treatment records, Social Security Administration (SSA) records, and VA treatment records have all been obtained. Additionally, the Veteran was offered the opportunity to testify at a hearing before the Board, but he declined.

The Veteran was also provided VA examinations (the reports of which have been associated with the claims file), which the Board finds to be adequate for rating purposes, as the examiner provided the information necessary to rate the service connected disabilities on appeal. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). Moreover, neither the Veteran nor his representative has objected to the adequacy of the examinations conducted during this appeal. See Sickels v. Shinseki, 643 F.3d, 1362, 1365-66 (Fed. Cir. 2011). 
 
As described, VA has satisfied its duties to notify and assist, and additional development efforts would serve no useful purpose. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994). Because VA's duties to notify and assist have been met, there is no prejudice to the Veteran in adjudicating this appeal.

Increased Ratings

Disability ratings are determined by the application of VA's Schedule for Rating Disabilities (Rating Schedule), which is based on the average impairment of earning capacity. Separate Diagnostic Codes identify the various disabilities. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. Pertinent regulations do not require that all cases show all findings specified by the Rating Schedule but findings sufficient to identify the disease and the resulting disability, and above all, coordination of the rating with impairment of function will be expected in all cases. 38 C.F.R. § 4.21; see also Mauerhan v. Principi, 16 Vet. App. 436 (2002).

The primary concern for an increased rating for a service-connected disability is the present level of disability. Although the overall history of the disability is to be considered, the regulations do not give past medical reports precedence over current findings. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). In all claims for an increased disability rating, VA has a duty to consider the possibility of assigning staged ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007).

The words "mild," "moderate," and "moderately severe" as used in the various diagnostic codes are not defined in the VA Schedule for Rating Disabilities. Rather than applying a mechanical formula, the Board must evaluate all of the evidence for "equitable and just decisions." 38 C.F.R. § 4.6. 

The term "incomplete paralysis" indicates a degree of lost or impaired function substantially less than the type picture for complete paralysis given with each nerve, whether due to varied level of the nerve lesion or to partial regeneration. When the involvement is wholly sensory, the rating should be for the mild, or at most, the moderate degree. 38 C.F.R. § 4.124a, Diseases of the Peripheral Nerves. 

Asthma

In April 2007, the Veteran filed his claim for an increased evaluation for his service connected asthma. In January 2008, he was granted an increased evaluation of 10 percent under Diagnostic Code 6202 effective April 30, 2007. In June 2013, he was granted an increased evaluation of 30 percent effective January 4, 2013. In January 2015, he was granted an increased evaluation of 100 percent effective July 9, 2014. As the Board previously denied entitlement to a disability evaluation in excess of 10 percent prior to January 4, 2013, the only issue that remains before the Board is entitlement to a disability evaluation in excess of 30 percent from January 4, 2013 to July 9, 2014.

Under Diagnostic Code 6602 for asthma, a 30 percent evaluation is assigned for an FEV-1 of 56 to 70 percent predicted, an FEV-1/FVC of 56 to 70 percent, or daily inhalational or oral bronchodilator. A 60 percent evaluation is assigned for an FEV-1 of 40 to 55 percent predicted, an FEV-1/FVC of 40 to 55 percent, at least monthly visits to a physician for required care of exacerbations, or intermittent courses of systemic corticosteroids therapy. A 100 percent evaluation is assigned for an FEV-1 less than 40-percent predicted, an FEV-1/FVC less than 40 percent, more than one attack per week with episodes of respiratory failure, or requires daily use of systemic high dose corticosteroids or immuno-suppressive medications. 38 C.F.R. § 4.497, Diagnostic Code 6202.

Between January 5, 2013 and July 9, 2014, the Veteran's medical record does not contain any pulmonary function tests, monthly visits for required care, or intermittent courses of systemic corticosteroids therapy.

At the January 2013 VA examination, which formed the basis for the Veteran's 30 percent rating, the VA examiner indicated that the Veteran required the intermittent use of inhalation anti-inflammatory medication. The Veteran did not have any physician visits for required care of exacerbations. A pulmonary function test showed the Veteran's FEV-1 was 97 percent and his FEV-1/FVC was 83 percent predicted pre-bronchilator and his FEV-1 was 100 percent and his FEV-1/FVC was 88 percent predicted post-bronchilator.

As such, clinical findings show that the Veteran's asthma met the criteria for the assigned 30 percent rating from January 4, 2013 to July 8, 2014, but no higher. Therefore, the appeal for a higher asthma rating is denied.

Low Back Disability

In April 2007, the Veteran filed his claim for an increased evaluation for his service connected low back disability. In January 2008, his 20 percent disability rating was continued. In July 2009, he was granted an increased evaluation of 40 percent effective August 26, 2008.

Back disabilities are rated under either the General Rating Formula for Diseases and Injuries of the Spine or the Formula for Rating Intervertebral Disc Syndrome (IVDS) based on Incapacitating Episodes, whichever method results in the higher evaluation when all disabilities are combined. 38 C.F.R. § 4.71a. 

Under the current Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes, a 10 percent rating is assigned when IVDS causes incapacitating episodes having a total duration of at least one week but less than two weeks during a 12 month period. A 20 percent rating is assigned when IVDS causes incapacitating episodes having a total duration of at least two weeks but less than four weeks during a 12 month period. A 40 percent rating is assigned when IVDS causes incapacitating episodes having a total duration of at least four weeks but less than six weeks during a 12 month period. A 60 percent rating is assigned when IVDS causes incapacitating episodes having a total duration of at least six weeks during a 12 month period. 38 C.F.R. § 4.71a, Diagnostic Code 5243. 

An incapacitating episode is a period of acute signs and symptoms due to IVDS that requires bed rest prescribed by a physician and treatment by a physician. 38 C.F.R. § 4.71a, Diagnostic Code 5243, Note (1). 

The evidence of record does not show that the Veteran has been diagnosed with IVDS in his thoracolumbar spine, but even if IVDS were found, there has not been any evidence showing or allegation of prescribed bed rest at any point to treat the Veteran's low back disability. For example, at a July 2007 VA examination, the Veteran reported experiencing incapacitating episodes, but there was no suggestion that bed rest had ever been prescribed. At a July 2009 VA examination, the Veteran reported that he had experienced low back incapacitations approximately four days every week since 2006. At a January 2013 VA examination, the Veteran reported having IVDS but denied having experienced any incapacitating episodes during the previous 12 months. At the June 2014 VA examination, the examiner indicated that while the Veteran had a history of IVDS, he had no IVDS episodes. In addition, the record does not show that the Veteran has been prescribed any bed rest to treat his low back during the course of his appeal. As such, a rating based on IVDS is not appropriate, and it is therefore more beneficial to evaluate the Veteran's back disability under the General Rating Formula for Diseases and Injuries of the Spine. 

Under the General Rating Formula for Diseases and Injuries of the Spine, a 20 percent evaluation is warranted if forward flexion of the thoracolumbar spine is greater than 30 degrees but not greater than 60 degrees, the combined range of motion of the thoracolumbar spine is not greater than 120 degrees; or if there is muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. A 40 percent evaluation is warranted if forward flexion of the thoracolumbar spine is 30 degrees or less or there is favorable ankylosis of the entire thoracolumbar spine. A 50 percent evaluation is warranted if there is unfavorable ankylosis of the entire thoracolumbar spine. A 100 percent evaluation is warranted for unfavorable ankylosis of the entire spine. 38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine.

Essentially, to obtain a schedular back rating in excess of 20 percent, the evidence must show either limitation of forward flexion or favorable ankylosis. Prior to August 26, 2008, neither was shown.

Prior to August 26, 2008, the Veteran's forward flexion was not shown to be functionally limited to 30 degrees or less. At a July 2007 VA examination, the Veteran demonstrated lumbar spine flexion to 58 degrees with pain at 50 degrees, extension to 15 degrees with pain at 10 degrees, right and left lateral flexion to 20 degrees with pain at 10 degrees, right lateral rotation to 30 degrees, and left lateral rotation to 35 degrees. After testing was completed, the Veteran was in additional pain and the examiner decided not to perform repetitive motion testing. No ankylosis was noted in the examination report.

Here, the Veteran clearing experienced pain on range of motion testing, but even if flexion was slightly limited by pain, pain alone is not sufficient to warrant a higher rating, as pain may cause a functional loss, but pain itself does not constitute functional loss. Mitchell v. Shinseki, 25 Vet. App. 32, 36-38 (2011) (emphasis added). Rather, pain must affect some aspect of "the normal working movements of the body" such as "excursion, strength, speed, coordination, and endurance," in order to constitute functional loss. Id. at 43; see 38 C.F.R. § 4.40. Here, the Veteran's pain began at 50 degrees of flexion, well beyond the 30 degrees required for a rating in excess of 20 percent. 

The Board has considered whether a higher disability evaluation is warranted on the basis of functional loss due to pain or due to weakness, fatigability, incoordination, or pain on movement of a joint under 38 C.F.R. §§ 4.40 and 4.45. See also DeLuca v. Brown, 8 Vet. App. 202 (1995). Functional loss contemplates the inability of the body to perform the normal working movements of the body with normal excursion, strength, speed, coordination and endurance, and must be manifested by adequate evidence of disabling pathology, especially when it is due to pain. 38 C.F.R. § 4.40. Additionally, painful motion is an important factor of disability; and joints that are actually painful, unstable, or malaligned, due to healed injury, should be entitled to at least the minimum compensable rating for the joint. 38 C.F.R. § 4.59. 

In this case, the Veteran's range of motion was clearly painful prior to August 2008, but the range of motion was not shown to be so functionally limited by symptoms such as pain, weakness, stiffness, fatigability, and lack of endurance as to approximately forward flexion to 30 degrees or less. As noted, at the July 2007 VA examination, the Veteran demonstrated pain-free forward flexion well beyond the limit for a rating in excess of 20 percent. As such, the criteria for a schedular rating in excess of 20 percent earlier than August 2008 have not been met.

Turning to a rating in excess of 40 percent, the evidence of record simply does not show that the Veteran has had unfavorable ankylosis of the entire thoracolumbar spine at any point during the appeal.

For VA compensation purposes, unfavorable ankylosis is a condition in which the entire cervical spine, the entire thoracolumbar spine, or the entire spine is fixed in flexion or extension, and the ankylosis results in one or more of the following: difficulty walking because of a limited line of vision; restricted opening of the mouth and chewing; breathing limited to diaphragmatic respiration; gastrointestinal symptoms due to pressure of the costal margin on the abdomen; dyspnea or dysphagia; atlantoaxial or cervical subluxation or dislocation; or neurologic symptoms due to nerve root stretching. Fixation of a spinal segment in neutral position (zero degrees) always represents favorable ankylosis.

At a June 2009 VA examination, while the VA examiner indicated that the Veteran had ankylosis of the thoracolumbar spine, but testing showed he retained some range of motion. For VA compensation purposes, unfavorable ankylosis is a condition in which the entire thoracolumbar spine is fixed in flexion or extension. VA treatment records also fail to show unfavorable ankylosis.

Thus, the Veteran does not have unfavorable ankylosis of the entire thoracolumbar spine for VA purposes, and a higher rating cannot be awarded on that basis. As noted, a finding of unfavorable ankylosis requires at least one of number of significant physical impairments such as difficulty walking because of a limited line of vision. While the Veteran's back disability undoubtedly causes discomfort, it was not shown to result in any of the physical impairments which would be representative of unfavorable ankylosis.

Accordingly, a schedular rating in excess of those assigned for the Veteran's low back disability is denied.
 
Bilateral Lower Extremity Radiculopathy

In April 2007, the Veteran filed his claim for an increased evaluation for his service connected left lower extremity radiculopathy rated at 10 percent disabling under Diagnostic Code 8599-8520. In July 2009, he was granted an increased rating of 20 percent effective July 9, 2009, for his left lower extremity radiculopathy. He was also granted service connection for right lower extremity radiculopathy rated at 10 percent disabling under Diagnostic Code 8520. In January 2015, he was granted an increased rating of 20 percent for his right lower extremity radiculopathy.

Diagnostic Code 8599 indicates the disability is not listed in the Schedule for Rating Disabilities and it has been rated by analogy under a closely related disease or injury. 38 C.F.R. §§ 4.20, 4.27. The RO rated the claims under Diagnostic Code 8520, which evaluates paralysis of the sciatic nerve. Under this Diagnostic Code, mild incomplete paralysis of the affected nerve is rated 10 percent disabling, moderate incomplete paralysis of the affected nerve is rated 20 percent disabling, and moderately severe incomplete paralysis of the affective nerve is rated 40 percent disabling. 38 C.F.R. § 4.124a, Diagnostic Code 8520.

The Veteran's treatment records show that in August 2008, he had normal neurological findings.

The Veteran has been afforded multiple VA examinations for his bilateral lower extremity radiculopathy. At an August 2008 VA examination, he had some tenderness and localized pain in the left lower extremity. He had no motor weakness. He had intact reflexes. He retained normal strength. He had significantly diminished pain sensation felt only as pressure over both thighs, but otherwise had no other sensory loss. He was diagnosed with radiculopathy.

In April 2009, the Veteran's lower extremities retained normal 5/5 strength and intact reflexes. However, by September 2009, he had mild lower extremity parasthesias and decreased reflexes.

At a July 2009 VA examination, the Veteran had numbness in both thighs with reported constant pain. His lower extremities retained normal 5/5 strength with no muscle atrophy, but he had some decreased sensation.

At a January 2013 VA examination, the Veteran had left lower extremity severe intermittent pain, moderate parethesias, and moderate numbness. He retained normal 5/5 strength with no muscle atrophy. He had hypoactive reflexes in his knee and ankle and decreased sensation in his foot. The examiner indicated that the Veteran had mild incomplete paralysis.

At a June 2014 VA examination, the Veteran reported radiating back pain into his lower extremities. He had no muscle testing and only slightly reduced 5-/5 muscle strength. He had decreased sensation. He walked with a cane and had a slow gait. Objective medical testing showed radiculopathy. Based on these findings, the RO assigned a 20 percent rating for the Veteran's bilateral lower extremity radiculopathy, despite the examiner indicating only mild incomplete paralysis. 

Thus, applying the regulations to the facts in the case, the Board finds that the criteria for a disability rating in excess of 10 percent prior to July 2009 are not met for the Veteran's left lower extremity radiculopathy. The evidence of record simply does not support a 20 percent rating under Diagnostic Code 8520, which would be warranted if moderate incomplete paralysis of the affected nerve were shown. Additionally, the criteria for a rating in excess of 20 percent after July 2009 are also not met. The evidence does not document moderately severe incomplete paralysis, which are required for a 40 percent rating under Diagnostic Code 8520. As noted, the medical evidence of record suggested that the incomplete paralysis was at most mild.

The Board finds that the criteria for a disability rating in excess of 20 percent after June 30, 2014 are not met for the Veteran's right lower extremity radiculopathy. The evidence of record simply does not support a 40 percent rating under Diagnostic Code 8520, as moderately severe incomplete paralysis of the affected nerve has not been shown. 

The Board has considered all other potentially applicable Diagnostic Codes, but has found that no other Diagnostic Codes would result in more favorable findings.

As described, the criteria for a schedular rating in excess of those assigned for the Veteran's bilateral lower extremity radiculopathy have not been met and his claim is denied. 

Bilateral Lower Extremity Neuropathy

In December 2013, the Veteran was granted service connection for bilateral lower extremity neuropathy rated at 10 percent disabling under Diagnostic Code 8526 effective April 30, 2007. He did not appeal the assigned rating. In January 2015, the Veteran was assigned a 20 percent rating for bilateral lower extremity neuropathy effective June 30, 2014. Ratings in excess of 20 percent for both lower extremities is on appeal to the Board.

Diagnostic Code 8526 evaluates paralysis of the anterior crural nerve. Under this Diagnostic Code, mild incomplete paralysis of the affected nerve is rated 10 percent disabling, moderate incomplete paralysis of the affected nerve is rated 20 percent disabling, and severe incomplete paralysis of the affected nerve is rated 30 percent disabling. 38 C.F.R. § 4.124a, Diagnostic Code 8526.

At a June 2014 VA examination, the Veteran reported burning pain, intermittent numbness, and weakness. On examination, he had slightly reduced 5-/5 strength with no muscle atrophy. He has decreased sensation. He walked with a cane and had a slow gait. Objective testing was not able to be performed on the affected nerves due to his obesity. However, the examiner classified the Veteran's symptoms as moderate. Based on these findings, the RO assigned a 20 percent rating for the Veteran's bilateral lower extremity neuropathy. 

Thus, applying the regulations to the facts in the case, the Board finds that the criteria for a disability rating in excess of 20 percent are not met for either of the lower extremities. The evidence of record simply does not support a 30 percent rating under Diagnostic Code 8526, which requires a showing of severe incomplete paralysis of the affected nerve.

Thus, the criteria for a schedular rating in excess of those assigned for the Veteran's bilateral lower extremity neuropathy have not been met and his claim is denied. 

Extraschedular Considerations

The Board has also considered whether this case should be referred to the Director of the VA Compensation and Pension Service for extraschedular consideration. 38 C.F.R. § 3.321(b)(1). The question of an extraschedular rating is a component of a claim for an increased rating. Bagwell v. Brown, 9 Vet. App. 337, 339 (1996). Although the Board may not assign an extraschedular rating in the first instance, it must specifically adjudicate whether to refer a case for extraschedular evaluation when the issue either is raised by the claimant or is reasonably raised by the evidence of record. Barringer v. Peake, 22 Vet. App. 242 (2008). The Court has clarified the analytical steps necessary to determine whether referral for such consideration is warranted. See Thun v. Peake, 22 Vet. App. 111 (2008). First, VA must first determine whether the available applicable schedular rating criteria are inadequate because they do not contemplate the Veteran's level of disability and symptomatology. If the rating criteria are inadequate, VA must then determine whether the Veteran exhibits an exceptional disability picture indicated by other related factors such as marked interference with employment or frequent periods of hospitalization. If such related factors are exhibited, then referral must be made to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for extraschedular consideration.

Regarding the Veteran's disabilities, the evidence suggests that the symptomatology is reasonably contemplated by the schedular rating criteria discussed above. The Veteran's disabilities were applied to the applicable rating criteria, general counsel opinions, and case law. Although the Diagnostic Codes allows for higher ratings, the Board fully explained why higher ratings were not warranted. Moreover, there is simply no allegation that the Veteran's disabilities are unique or unusual way. 

There is no question that the Veteran experiences symptoms from his low back, bilateral lower extremity radiculopathy, and bilateral lower extremity neuropathy, which include pain, paresthesia, and numbness, but such symptoms, while not specifically enumerated is considered in the schedular ratings that are assigned, as the Board is required to consider functional limiters such as pain in assessing orthopedic injuries. See 38 C.F.R. §§ 4.40, 4.45; see also DeLuca v. Brown, 8 Vet. App. 202 (1995). Thus, while the Veteran may experience some symptoms that are not specifically enumerated in the rating schedule, the Board is charged with considering how functionally impaired the Veteran's disabilities renders him within the confines of the schedular rating that is assigned.

Additionally, the Veteran's neuropathy and radiculopathy are rated based on the severity of the condition, and terms such as mild, moderate, moderately severe and severe give the Board full flexibility to consider all neurologic symptomatology within the confines of the schedular ratings that are assigned.

With regard to the Veteran's asthma, there is again no allegation of anything unique or unusual about the condition. The Veteran is provided a schedular rating that is an effort to quantify the limitation he has breathing, and there is no suggestion of symptoms that are caused by the asthma, but not taken into account by the schedular rating that is assigned.

As such, the schedular rating criteria reasonably describe the symptoms caused by the service connected disabilities on appeal, and therefore referral for consideration of an extraschedular rating is not warranted.

The Board has also considered whether an inferred claim for a total disability rating based on individual unemployability (TDIU) under Rice v. Shinseki, 22 Vet. App. 447 (2009) has been raised. Here, the Veteran was granted TDIU by a February 2010 rating decision. The Veteran he has not specifically alleged since that he is unemployable on account of any of his service-connected disabilities on appeal. Thus, the Board finds that Rice is inapplicable 


ORDER

A evaluation in excess of 30 percent for asthma from January 4, 2013 to July 9, 2014, is denied.

A evaluation in excess of 20 percent prior to August 26, 2008, and in excess of 40 percent after August 26, 2008, for a low back disability is denied.

A rating in excess of 10 percent prior to July 9, 2009, and in excess of 20 percent after July 9, 2009, for left lower extremity radiculopathy is denied.

A rating in excess of 20 percent for right lower extremity radiculopathy is denied.

A rating in excess of 20 percent for right lower extremity neuropathy is denied.

A rating in excess of 20 percent for left lower extremity neuropathy is denied.


____________________________________________
MATTHEW W. BLACKWELDER
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs